DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant/Cross-Appellee, Mary Niskanen, appeals from judgment of the Summit County Court of Common Pleas in favor of Appellee/Cross-Appellant, Giant Eagle, on her wrongful death and survivorship claims against it, which stem from the death of her son, Paul Niskanen, at the Giant Eagle grocery store in Rootstown, Ohio. This Court reverses and remands for a new trial.
 {¶ 2} The following facts were revealed through basically undisputed evidence at trial. On the evening of January 21, 2004, Paul Niskanen went to the Giant Eagle grocery store in Rootstown, Ohio, and loaded several grocery items into a shopping cart. Niskanen took the cart of items to register number three, *Page 2 
where Lindsay White was working. While White was ringing up the groceries, which totaled $289.02, she asked Niskanen for his Giant Eagle Advantage Card, a customer savings card. Niskanen indicated that he could not find his Advantage Card and that he would have to go to his car and get his wallet. Niskanen left the register and went outside.
 {¶ 3} There was considerable evidence about Niskanen's inability to find his Advantage Card and his attempt to get a temporary card at the customer service desk, and it was not clear whether Niskanen had a wallet with him that evening. Nonetheless, the evidence was undisputed that Niskanen left the register for several minutes and, while he was away, the store manager, John Maczko, came to White's register. Niskanen returned and, while he approached or was standing near the grocery cart, White alerted Maczko to her belief that Niskanen was planning to take the groceries without paying for them.
 {¶ 4} At about the same time, Niskanen left the store with the cart of groceries and Maczko ran after him. Maczko lost sight of Niskanen and Niskanen gained a bigger lead because Maczko had to wait for the automatic doors to open. When Maczko reached the parking lot, he saw Niskanen loading the groceries into the trunk of his car. Maczko believed that Niskanen was attempting to flee with the groceries, so he yelled to Jonathon Stress, a Giant Eagle employee who was retrieving carts in the parking lot, to "stop the shoplifter," or words to that effect. *Page 3 
 {¶ 5} In response to Maczko's words, Stress ran toward Niskanen. Niskanen immediately stopped loading the groceries, closed the trunk of his car, and ran around to the driver's side door. Stress reached Niskanen before he was able to get into the car. As Stress approached him, Niskanen threw a punch at Stress, knocking him to the ground. Maczko observed what happened and ran over to assist Stress. Maczko attempted to grab Niskanen in a bear hug from behind, but Niskanen broke free and began punching Maczko. In the scuffle, all three men somehow fell to the ground.
 {¶ 6} Although his exact words are not clear, Maczko screamed for help, causing passerby David Alexoff, a customer who was exiting the store, to join in the effort to restrain Niskanen. All three men were eventually on top of Niskanen, holding him down. Maczko, who had sustained minor injuries, later got off Niskanen but was replaced by Paul Taylor, another Giant Eagle employee.
 {¶ 7} At some point during the approximate 10 minutes that the men were restraining Niskanen, Niskanen stopped struggling. Several witnesses explained that, for approximately five minutes, Niskanen was no longer resisting and was not even moving and they heard no sounds from him. Alexoff, while helping to restrain Niskanen, as well as several other passersby questioned whether Niskanen was okay and whether he could breathe. None of the men on top of Niskanen ever verified that he was still breathing, but they instead waited for the sheriffs department to arrive. By the time the Portage County Sheriffs Department *Page 4 
arrived, and they told the men to get off Niskanen, Niskanen had succumbed to death by asphyxiation.
 {¶ 8} Paul Niskanen's mother Mary, as a survivor and as the administratrix of his estate, filed this action against Giant Eagle, Maczko, Stress, Taylor, and Alexoff, alleging numerous intentional tort and negligence claims. Niskanen later dismissed all intentional tort claims and all claims against the individual defendants. The case proceeded to trial solely against Giant Eagle for negligence, undue restraint, wrongful death, and spoliation of evidence. Giant Eagle conceded that its employees, Maczko, Stress, and Taylor, were acting within the scope of their employment when Niskanen died.
 {¶ 9} The trial focused on Niskanen's claims that Giant Eagle had negligently failed to train Maczko, Stress, and/or Taylor about its own policies pertaining to the pursuit, apprehension, and detention of suspected shoplifters. Niskanen alleged that Giant Eagle's failure to train these employees had caused Niskanen's death. Niskanen also claimed that Giant Eagle had used unreasonable force in restraining Niskanen, even if it had a legal right to pursue, detain, and restrain him as a suspected shoplifter. Niskanen also had a claim against Giant Eagle for spoliation of evidence for Giant Eagle's failure to preserve all of the store video surveillance tapes from the day of the incident. Niskanen further sought punitive damages on her claims, and attempted to establish that Giant *Page 5 
Eagle's negligence had risen to the level of a conscious disregard for the rights and safety of others.
 {¶ 10} During the trial, although there were some minor inconsistencies in the testimony, the details of the incident were revealed as described above. The crux of Niskanen's failure to train claim was that Giant Eagle had a policy that its employees should not pursue a fleeing suspect, they should not rely solely on the word of others to detain a suspect, they should identify themselves when approaching a suspect, and if a suspect responds with physical aggression, they should disengage. Evidence was also presented that the primary reason for this policy was to minimize the potential for injury to the suspect, employees, and/or innocent bystanders because shoplifting suspects who are confronted, detained, or apprehended will sometimes respond with physical aggression, potentially causing injury to themselves or others.
 {¶ 11} The evidence further revealed that Maczko, the store manager who pursued Niskanen out of the store and ordered Stress to help stop him, had never received any training about this policy and, in fact, was not aware that Giant Eagle had such a policy. The jury found that Giant Eagle's negligence had caused Niskanen's death. The jury found for Giant Eagle on all other claims.
 {¶ 12} The trial also focused in large part on Giant Eagle's defenses, self-defense and comparative negligence. Giant Eagle's primary defense was self-defense and the trial was mainly focused on whether the Giant Eagle employees *Page 6 
had a legal right to defend themselves and each other against the physical force exerted by Niskanen when he was approached by Stress. This evidence included the testimony of a security expert who testified that the Giant Eagle employees were legally entitled to defend themselves and each other in this situation.
 {¶ 13} The jury found that the Giant Eagle employees had acted in self-defense and that Niskanen's comparative negligence had exceeded the negligence of Giant Eagle. Consequently, the trial court entered judgment for Giant Eagle.
 {¶ 14} Niskanen appeals and raises seven assignments of error. Giant Eagle cross-appeals and raises four assignments of error.
 FIRST ASSIGNMENT OF ERROR "THE TRIAL COURT ERRED IN REMOVING PUNITIVE DAMAGES FROM THE JURY'S CONSIDERATION BASED SOLELY ON THE JURY'S DETERMINATION THAT THE COMPARATIVE NEGLIGENCE OF PAUL NISKANEN EXCEEDED THE NEGLIGENCE OF GIANT EAGLE."
 {¶ 15} Niskanen challenges the trial court's interrogatories to the jury that allowed the jury to consider the issue of punitive damages only if it found that Giant Eagle's negligence exceeded any negligence on the part of Paul Niskanen. Niskanen contends that the trial court erred in removing the issue of punitive damages from the jury solely because the jury found that Paul Niskanen's negligence exceeded that of Giant Eagle. This Court agrees.
 {¶ 16} "[The] key to the recovery of punitive damages in Ohio is a finding of malice, and a claim based on negligence can provide the basis for an award of *Page 7 
punitive damages if there is an adequate showing of actual malice."Burns v. Prudential Securities, Inc., 167 Ohio App.3d 809, 843,2006-Ohio-3550, at ¶ 101, citing Preston v. Murty (1987),32 Ohio St.3d 334, 335-336. Because punitive damages require proof that the defendant acted with a greater level of culpability than mere negligence, the negligence of the plaintiff does not serve to set off damages.
 {¶ 17} A finding by the jury that a plaintiff was comparatively negligent will not defeat or diminish the recovery of damages where the defendant acted with actual malice. Schellhouse v. Norfolk WesternRy. Co. (1991), 61 Ohio St.3d 520, 525. Had the trial court allowed the jury to consider the punitive damage issue, the jury might have found that Giant Eagle acted with actual malice, and such a finding would have negated any potential set-off for damages under Ohio's comparative negligence law. See Wightman v. Consol. Rail Corp. (1994),94 Ohio App.3d 389, 398.
 {¶ 18} Niskanen's first assignment of error is sustained.
 SECOND ASSIGNMENT OF ERROR "THE TRIAL COURT ERRED IN REFUSING TO INSTRUCT THE JURY ON NISKANEN'S NEGLIGENCE CLAIM FOR THE USE OF FORCE, WHERE SUCH CLAIM WAS SEPARATELY PLED AND EXISTS AS A DISTINCT AND SEPARATE CLAIM FROM NISKANEN'S STATUTORY CLAIM UNDER R.C. 2935.041."
 {¶ 19} Niskanen next asserts that the trial court erred in failing to instruct the jury on her common law claim for Giant Eagle's use of excessive force. As *Page 8 
will be discussed in this Court's disposition of Niskanen's third, fourth, and fifth assignments of error, this case became improperly focused on whether the Giant Eagle employees had acted in self-defense. Because much of Niskanen's argument is intertwined with her challenges to Giant Eagle's defense of self-defense, which will be addressed below, the second assignment of error is overruled.
 THIRD ASSIGNMENT OF ERROR "THE TRIAL COURT ERRED IN ALLOWING GIANT EAGLE'S PURPORTED RETAIL SECURITY EXPERT, RALPH WITHERSPOON, TO PRESENT OPINION TESTIMONY IN VIOLATION OF EVID.R. 702 AND 703."
 FOURTH ASSIGNMENT OF ERROR "THE TRIAL COURT ERRED IN INSTRUCTING THE JURY THAT GIANT EAGLE'S AFFIRMATIVE DEFENSES OF SELF DEFENSE AND/OR CONTRIBUTORY NEGLIGENCE APPLIED TO (1) NISKANEN'S CLAIM OF COMMON LAW NEGLIGENCE ARISING FROM GIANT EAGLE'S FAILURE TO PROPERLY TRAIN ITS EMPLOYEES, AND (2) NISKANEN'S STATUTORY CLAIM FOR UNDUE RESTRAINT UNDER R.C. 2935.041."
 FIFTH ASSIGNMENT OF ERROR "THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY THAT IT COULD NOT FIND IN FAVOR OF GIANT EAGLE ON THE AFFIRMATIVE DEFENSE OF SELF DEFENSE UNLESS GIANT EAGLE FIRST ESTABLISHED THAT ITS EMPLOYEES DID NOT VIOLATE THE DUTY TO RETREAT." *Page 9 
 Self-Defense {¶ 20} Through three of her assignments of error, Niskanen has challenged the trial court's instruction to the jury on Giant Eagle's defense of self-defense and defense of others. Niskanen asserts many challenges to the self-defense instruction, including that such a defense was inapplicable here and that Giant Eagle's expert witness impermissibly gave ultimate legal conclusions on whether it was appropriate for Maczko to run to the defense of Stress. Because this Court agrees that the defense of self-defense was inapplicable in this negligence case, the analysis will be confined primarily to that issue.
 {¶ 21} Although Niskanen's suit originally included claims for intentional torts such as assault and false imprisonment, Niskanen had dismissed those claims prior to trial and the case proceeded on claims sounding solely in negligence. The defense of self-defense, while arguably a legitimate defense against Niskanen's claims for assault, was not an appropriate defense to Niskanen's negligence claims, which focused on whether Giant Eagle's failure to train its employees had caused Niskanen's death and/or whether Niskanen's death had been caused by an unreasonable use of force to restrain a suspected shoplifter.
 {¶ 22} Negligence "connotes an unintentional act;" self-defense, on the other hand, is "an intentional response to an intentional act."Robinson v. Brown (Feb. 21, 1989), 12th Dist. No. 88-07-052. "[A]n intentional tort is subject to such defenses as self-defense and necessity. But torts of negligence and recklessness *Page 10 
are not subject to such defenses, because the plaintiff does not establish a prima facie tort in the first instance if the defendant has such a reasonable explanation for his actions." Simons, Rethinking Mental States (1992), 72 B.U. L. Rev. 463 at 554, fn. 309.
 {¶ 23} In the criminal context, it has long been understood that a defendant cannot act negligently and, at the same time, raise the defense of self-defense because the two theories are inconsistent. A person claiming self-defense concedes that he or she intended to commit the act, but asserts he or she was justified in doing so. State v. Barnd(1993), 85 Ohio App.3d 254, 260.
 {¶ 24} "The substance of the claim of self-defense is that the defendant was justified in using deadly force intentionally. The assertion of self-defense is inconsistent with the claim that the defendant is guilty, at the most, of negligent [conduct]." (emphasis in original) State v. Turner (Mar. 20, 1980), 8th Dist. No. 40159. "Self-defense presumes intentional, willful use of force to repel force or escape force. * * * The defense of self-defense is factually inconsistent with the allegation that the homicide was unintentional." See, also State v. King (1984), 20 Ohio App.3d 62, 64. It has also been held that a jury instruction given on negligent homicide is inconsistent with a jury instruction given on self-defense. See State v. Grace
(1976), 50 Ohio App.2d 259; State v. Williams (1981), 2 Ohio App.3d 289. *Page 11 
 {¶ 25} This Court has found no Ohio authority for recognizing self-defense as a defense in a negligence action. Although a few courts in other jurisdictions have recognized that self-defense may be a defense to negligence in limited situations, those situations have involved a defendant who was alleged to have intentionally harmed the plaintiff, but the plaintiff's claims were couched in terms of negligence. See, e.g., Brown v. Robishaw (2007), 282 Conn. 628;Blackburn v. Johnson (1989), 187 Ill.App.3d 557. Even if this Court were inclined to follow the reasoning of those other jurisdictions, there were no similar claims or allegations in this case.
 {¶ 26} Although the acts of the individual employees did involve the intentional use of force against Paul Niskanen, his estate had dismissed all claims for assault, battery, false imprisonment, or any intentional torts as well as all claims against the individual defendants. There were no longer any claims that Giant Eagle or any of its employees had intentionally harmed Niskanen. Because the defense, and much of the trial, improperly focused on an alleged justification for the intentional physical actions of the individual employees (Maczko, Stress, and Taylor), the jury lost sight of the entire gist of Niskanen's claims against Giant Eagle, who was the only defendant remaining in this case.
 {¶ 27} The plaintiffs proceeded solely on claims of failure to train and unreasonable restraint. The theory of the negligent failure to train claim was that Giant Eagle's store manager never should have pursued Niskanen into the parking *Page 12 
lot and/or yelled at another employee to stop him because those actions of attempting to stop and/or confront a fleeing shoplifter were in violation of Giant Eagle's own policy, a policy about which the store manager had never received any training. Moreover, there was evidence that the violent response of Niskanen and his ultimate death by asphyxiation was one of the specific risks that Giant Eagle's policy was intended to avoid, and Giant Eagle was aware of similar deaths occurring at the stores of other retailers.
 {¶ 28} The defense of self-defense was completely irrelevant to whether Giant Eagle's failure to train had caused Niskanen's death and it merely served to confuse the claim before the jury. Focusing on Niskanen's violent response as a justification of the acts of the individual employees took the focus away from the real issue: whether the employees violated Giant Eagle's own policy by confronting Niskanen in the parking lot and whether Giant Eagle's failure to train its employees about the proper procedures for the pursuit, detention, and restraint of shoplifters had caused Niskanen's death.
 {¶ 29} Self-defense was likewise irrelevant to Niskanen's claim that the Giant Eagle employees unreasonably restrained Niskanen. The unreasonable restraint claim was premised on the legal right of Giant Eagle, under R.C. 2935.041, to pursue and detain suspected shoplifters, with recognition that their suspicion must be supported by probable cause and the detention must be in a "reasonable manner" and for a "reasonable length of time." R.C. 2935.041. The *Page 13 
so-called shopkeeper's privilege presupposes that Giant Eagle had a legal right to restrain Niskanen if probable cause existed that he had stolen merchandise. Again, by focusing on the irrelevant defense of self-defense, the jury was not properly focused on the issue before it: whether Giant Eagle had probable cause to believe Niskanen had stolen merchandise and whether its detention was in a reasonable manner and for a reasonable time.
 Comparative Negligence Defense {¶ 30} Niskanen also asserts through her fourth assignment of error that the trial court erred in instructing the jury on the defense of comparative negligence. Niskanen essentially argues that, for the same reason self-defense was inapplicable to her negligence claims, the defense of comparative negligence was likewise inappropriate here. Although this Court agrees that the defense of self-defense was inapplicable here and that the trial court erred in allowing the jury to consider that defense, Niskanen has failed to cite any legal authority to support her position that comparative negligence cannot be a defense to her claims. Moreover, she has failed to convince this Court that there was no evidence to support an instruction on comparative negligence.
 {¶ 31} Unlike the defense of self-defense, Ohio does recognize comparative negligence as a defense to a claim of negligence. See R.C.2315.32(B). An instruction on comparative negligence is warranted where there is evidence of "any want of ordinary care on the part of the person injured, which combined and *Page 14 
concurred with the defendant's negligence and contributed to the injury as a proximate cause thereof, and as an element without which the injury would not have occurred." Brinkmoeller v. Wilson (1975),41 Ohio St.2d 223, 226.
 {¶ 32} Even though Paul Niskanen's acts of throwing punches at Stress and Maczko were apparently intentional, the jury could reasonably conclude that Niskanen also had been negligent because he intentionally placed himself in a position of danger that would be apparent to an ordinary prudent person. See Brunette v. Employers Mut. Liab. Ins. Co.of Wisconsin (1982), 320 N.W.2d 43, 44 (holding that a traffic violator who intentionally fled from police at an excessive rate of speed, and was eventually injured in a collision with the police cruiser, had been negligent because he unreasonably placed himself at risk for injury).
 {¶ 33} It will be for the jury on retrial to determine whether, and to what extent, Niskanen's action of responding with physical violence against some of the Giant Eagle employees may have amounted to negligence that was a contributing cause of his own death.
 {¶ 34} Niskanen's arguments that the trial court erred in instructing the jury on self-defense are well taken and, to that extent, her third, fourth, and fifth assignments of error are sustained. Insofar as Niskanen challenges the jury instructions on comparative negligence, her fourth assignment of error is overruled. *Page 15 
 SIXTH ASSIGNMENT OF ERROR "THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY THAT A DECEDENT'S ALLEGED COMMISSION OF FELONIOUS ACTS DOES NOT BAR HIS ESTATE FROM RECOVERING FOR THE INTENTIONAL OR NEGLIGENT ACTS OF OTHERS."
 {¶ 35} Niskanen asserts that the trial court erred in failing to instruct the jury that Paul Niskanen's alleged commission of a felony did not preclude recovery in this action by his estate. This assigned error is intertwined with challenges to Giant Eagle's defense of self-defense, and has therefore been rendered moot by this Court's disposition of Niskanen's third, fourth, and fifth assignments of error and this Court need not reach Niskanen's arguments. See App.R. 12(A)(1)(c).
 SEVENTH ASSIGNMENT OF ERROR "THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY ON NISKANEN'S SPOLIATION OF EVIDENCE CLAIM THAT NISKANEN WAS ENTITLED TO A PRESUMPTION IN HER FAVOR THAT THE EVIDENCE DESTROYED WAS FAVORABLE TO NISKANEN'S CASE."
 {¶ 36} Niskanen's seventh assignment of error is that the trial court erred in failing to give a requested jury instruction pertaining to her claim for spoliation of evidence. Because this assignment of error is rendered moot by this Court's disposition of the second cross-assignment of error, it will not be addressed. See App.R. 12(A)(1)(c). *Page 16 
 CROSS-APPEAL FIRST CROSS-ASSIGNMENT OF ERROR "THE TRIAL COURT ERRED BY FAILING TO GRANT A DIRECTED VERDICT IN FAVOR OF GIANT EAGLE ON MRS. NISKANEN'S CLAIM FOR PUNITIVE DAMAGES."
 {¶ 37} Through its first cross-assignment of error, Giant Eagle maintains that the trial court should have granted a directed verdict on Niskanen's claim for punitive damages. Civ.R. 50(A)(4) requires a trial court to grant a properly filed motion for directed verdict if "after construing the evidence most strongly in favor of the party against whom the motion is directed, [it] finds that * * * reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party[.]"
 {¶ 38} An award of punitive damages in a tort case may be made only upon a finding of actual malice on the part of the defendant. Calmes v.Goodyear Tire Rubber Co. (1991), 61 Ohio St.3d 470, 473. The Ohio Supreme Court has defined actual malice for purposes of punitive damages to include "a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm."Preston v. Murty (1987), 32 Ohio St.3d 334, syllabus.
 {¶ 39} Giant Eagle essentially argues that there was no merit to Niskanen's negligence claims and that, consequently, her claims for punitive damages must likewise fail. Even with the confusion of legal issues created by the improper evidence and legal instruction on self-defense, the jury found that Giant Eagle's *Page 17 
negligence had caused the death of Paul Niskanen. Because reasonable minds could differ as to whether Giant Eagle's alleged negligence rose to the level of a conscious disregard for the rights and safety of others, the trial court did not err in denying Giant's Eagle's motion for a directed verdict on Niskanen's claim for punitive damages. The first cross-assignment of error is overruled.
 SECOND CROSS-ASSIGNMENT OF ERROR "THE TRIAL COURT ERRED BY FAILING TO GRANT A DIRECTED VERDICT IN FAVOR OF GIANT EAGLE ON MRS. NISKANEN'S CLAIM FOR SPOLIATION OF EVIDENCE."
 {¶ 40} Giant Eagle contends that it should have been granted a directed verdict on Niskanen's claim for spoliation of evidence. This Court agrees.
 {¶ 41} To establish a claim for spoliation or destruction of evidence, a plaintiff must establish the following elements:
 "(1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiffs case, (4) disruption of the plaintiffs case, and (5) damages proximately caused by the defendant's acts[.]" Smith v. Howard Johnson Co., Inc.(1993), 67 Ohio St.3d 28, 29.
 {¶ 42} The term "willful," as used in "willful destruction of evidence by defendant designed to disrupt the plaintiff's case," "necessarily contemplates more than mere negligence or failure to conform to standards of practice, but instead anticipates an intentional, wrongful act." White v. Ford Motor Co. (2001), 142 Ohio App.3d 384, 387-88, citing Drawl v. Cornicelli (1997), 124 Ohio App.3d 562. *Page 18 
 {¶ 43} No one disputes that Niskanen could establish the first two elements of a spoliation of evidence claim: that there was pending or probable litigation by Niskanen and that Giant Eagle was aware that litigation was probable. This claim hinged on whether Niskanen could establish that Giant Eagle willfully destroyed evidence in an effort to disrupt her case and that her case was in fact harmed by the loss of that evidence. Niskanen contended that Giant Eagle willfully destroyed evidence by preserving only portions of the videotaped footage from the eleven video surveillance cameras that were operating in the store on January 21, 2004. Although Niskanen was able to establish that Giant Eagle preserved only select portions of the video surveillance footage, and that it destroyed the rest, she failed to make any showing that Giant Eagle destroyed any relevant footage.
 {¶ 44} Giant Eagle witnesses testified that they preserved all video footage from January 21, 2004 that included any images of Niskanen in the store that evening. Witnesses explained that, due to the placement of cameras in the store, Niskanen could only be seen on certain cameras and there were gaps as he moved through the store out of the range of any cameras. The evidence also demonstrated that, due to the limited placement of cameras in and near the store, there never was any surveillance footage at register number three and the area near the door where Niskanen took the cart of groceries, nor were there cameras outside the store where the restraint and ultimate death of Niskanen occurred. Niskanen presented nothing to dispute any of this evidence. *Page 19 
 {¶ 45} Giant Eagle had destroyed some video footage, but there was no evidence to even suggest that any of that any of the destroyed footage would have been helpful to Niskanen's case. There was no evidence upon which reasonable minds could conclude that Giant Eagle had willfully destroyed evidence in an effort to disrupt Niskanen's case or that her case was disrupted. Consequently, the trial court should have granted Giant Eagle a directed verdict on this claim. The second cross-assignment of error is sustained.
 THIRD CROSS-ASSIGNMENT OF ERROR "THE TRIAL COURT ERRED BY FAILING TO GRANT A DIRECTED VERDICT IN FAVOR OF GIANT EAGLE ON MRS. NISKANEN'S CLAIM FOR NEGLIGENCE."
 FOURTH CROSS-ASSIGNMENT OF ERROR "THE TRIAL COURT ERRED BY FAILING TO GRANT A DIRECTED VERDICT IN FAVOR OF GIANT EAGLE ON MRS. NISKANEN'S CLAIM FOR UNDUE RESTRAINT."
 {¶ 46} Through its third and fourth cross-assignments of error, Giant Eagle asserts that the trial court erred in failing to grant it a directed verdict on Niskanen's claims for negligence and undue restraint because all of the actions of Giant Eagle's employees were justified by self-defense. Because this Court determined through its disposition of Niskanen's third, fourth, and fifth assignments of error that the defense of self-defense was inapplicable in this case, the third and fourth cross-assignments of error are overruled. *Page 20 
 SUMMARY {¶ 47} Niskanen's first assignment of error is sustained. Her third, fourth, and fifth assignments of error are sustained insofar as they challenge the jury's consideration of the defense of self-defense. Niskanen's second assignment of error is overruled and her remaining assignments of error were not addressed because they have been rendered moot. Giant Eagle's second cross-assignment of error is sustained and its remaining cross-assignments of error are overruled. The cause is reversed and remanded for a new trial on Niskanen's claims, absent her claim for spoliation of evidence.
Judgment reversed and cause remanded
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of *Page 21 
Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellee/cross-appellant.
MOORE, J. CONCURS