NISKANEN, APPELLEE, *v.* GIANT EAGLE, INC., APPELLANT, ET AL.

[Cite as *Niskanen v. Giant Eagle, Inc.,* 122 Ohio St.3d 486, 2009-Ohio-3626.]

*Civil actions — Negligence — Damages — Punitive damages are not recoverable without award of compensatory damages — Presence of actual malice does not entitle party to recovery of punitive damages if no compensatory damages awarded — Self-defense is available as defense to negligence action if relevant and evidence supports it.*

(No. 2008-0895 — Submitted April 22, 2009 — Decided July 30, 2009.)

APPEAL from the Court of Appeals for Summit County,

No. 23445, 2008-Ohio-1385.

_____

**SYLLABUS OF THE COURT**

1. Punitive damages are available in negligence actions only if compensatory damages are awarded. (R.C. 2315.21(C)(1) and (2), applied.)

2. The issue of whether self-defense applies to a particular tort claim is to be determined on a case-by-case basis by examining whether the evidence supports the defense; there is no per se rule against asserting self-defense in negligence actions.

_____

**MOYER, C.J.**

**I**

**{¶ 1}** This appeal presents three issues for our review: (1) whether punitive damages may be awarded when a plaintiff pursues only negligence causes of action and does not receive any compensatory damages, (2) whether a defendant may claim self-defense as an affirmative defense to a negligence cause

of action, and (3) whether a plaintiff may bring a cause of action for undue restraint under R.C. 2935.041.

{¶ 2} For the following reasons, we reverse the judgment of the court of appeals and hold that punitive damages are not available in negligence causes of action unless the plaintiff is awarded compensatory damages and that self-defense may be asserted as a defense to a negligence cause of action if the defense is supported by the facts of the case and is relevant to the cause of action. However, we decline to answer the third question, as the appellant failed to raise it in the proceedings below.

## II

{¶ 3} Appellant, Giant Eagle, Inc., operates a Giant Eagle grocery store in Rootstown, Ohio. Paul Niskanen ("Paul"), son of appellee Mary Niskanen ("Niskanen"), entered this store and filled a shopping cart with approximately $289 worth of groceries. Paul eventually left the store with the merchandise but without paying for it.

{¶ 4} A dramatic and ultimately tragic series of events followed. A store manager followed Paul outside and saw him loading the groceries into a car. The manager yelled to a store employee who was gathering carts in the parking lot and told him to stop Paul. The employee ran to detain Paul; Paul punched the employee, knocking him to the ground. The manager ran to the assistance of his employee, and Paul punched him twice in the face. The manager fell to the pavement, and Paul kicked or punched him several more times.

{¶ 5} A struggle ensued between Paul and the two employees. Two passersby came to their aid after hearing the manager calling for help. The men eventually subdued Paul by climbing on top of him and using various forms of restraint to hold him on the ground.

{¶ 6} The police arrived a short time later and told the men to get off Paul, whom they were still holding on the ground. When the men got up, the

police discovered that Paul did not have a pulse. He was transported to a local hospital where he was pronounced dead. A subsequent autopsy confirmed that the cause of death was asphyxiation resulting from neck and torso compression.

{¶ 7} Niskanen filed the instant survival and wrongful-death action against Giant Eagle and the various men involved in the confrontation, alleging numerous intentional-tort and negligence claims. On the morning of trial, she dismissed all the intentional-tort claims and all the claims against the individual defendants. Only three causes of action remained for trial: (1) negligent failure to train, whereby Niskanen alleged that Giant Eagle had failed to properly instruct its employees regarding industry-standard antishoplifting policies, (2) undue restraint,[1] using force in excess of that permitted under R.C. 2935.041, and (3) spoliation of evidence through the destruction of surveillance videotapes. Giant Eagle claimed, inter alia, that its employees had acted in self-defense.

{¶ 8} The jury determined that Giant Eagle was negligent in failing to train its employees but that Giant Eagle did not use undue restraint or willfully destroy evidence. However, the jury found Giant Eagle to be only 40 percent liable for Paul's death under the failure-to-train claim; it found that Paul was also negligent and that he was 60 percent liable for his own death. Because Paul was more than 50 percent liable for his injuries, the court did not award any compensatory damages to Niskanen. The trial court instructed the jury not to consider punitive damages if it awarded no compensatory damages, and thus no finding as to those damages was made. The jury also found that Giant Eagle's employees had acted in self-defense. Based on these findings, the trial court entered judgment for Giant Eagle.

---

1. The parties and the courts below have used the terms "unlawful restraint" and "undue restraint" interchangeably when describing this claim. For the sake of consistency, we refer to it as "undue restraint."

**{¶ 9}** The court of appeals reversed, holding that (1) the trial court should have allowed the jury to consider punitive damages because such damages may be awarded even in the absence of compensatory damages if the defendant acted with actual malice, and (2) self-defense may not be asserted in negligence causes of action, but even if it is an appropriate affirmative defense to negligence, it was not relevant to Niskanen's claims in this case. Summit App. No. 23445, 2008-Ohio-1385, at ¶16–17, 20–29. Based on these holdings, the court of appeals reversed the trial court's judgment and remanded for a new trial. Id. at ¶ 47. Giant Eagle did not raise, and the court of appeals did not address, the issue of whether a cause of action exists under R.C. 2935.041.

**{¶ 10}** We accepted Giant Eagle's discretionary appeal. 119 Ohio St.3d 1407, 2008-Ohio-3880, 891 N.E.2d 768.

### III

### A. Punitive damages

**{¶ 11}** The first issue presented is whether a plaintiff may receive punitive damages when he or she has asserted only negligence causes of action and has received no compensatory damages for those causes of action. Giant Eagle asserts that because Niskanen dropped all her intentional-tort actions on the morning of trial and because the jury found that Paul was 60 percent liable for his own death on the remaining negligence cause of action, Niskanen may not recover punitive damages. Niskanen argues, and the court of appeals held, that punitive damages may be recoverable when the defendant acted with actual malice, even if no compensatory damages are awarded.

**{¶ 12}** We agree with Giant Eagle. Pursuant to statute, a plaintiff must be awarded some measure of compensatory damages to receive punitive damages. See R.C. 2315.21(C)(1) and (2)[2] (allowing punitive damages only when (1) the

_____

2. {¶ a} R.C. 2315.21(C) provides:

defendant acted with either malice or aggravated or egregious fraud and (2) the trier of fact awards the plaintiff compensatory damages).  The court of appeals focused on the first requirement and held that, since it is possible that Giant Eagle acted with actual malice in this case, the jury should have been allowed to consider punitive damages.  2008-Ohio-1385, 2008 WL 786820, at ¶16–17. However, this holding ignores the second requirement for the awarding of such damages.  See *Malone v. Courtyard by Marriott L.P.* (1996), 74 Ohio St.3d 440, 447, 659 N.E.2d 1242 ("As we have held time and again, punitive damages may not be awarded when a jury fails to award compensatory damages").

**{¶ 13}** The compensatory-damages requirement prevents plaintiffs from bringing cases solely for an award of punitive damages; they are not independent remedies.  "Punitive damages are awarded as punishment for causing compensable harm and as a deterrent against similar action in the future. No civil cause of action in this state may be maintained simply for punitive damages." *Bishop v. Grdina* (1985), 20 Ohio St.3d 26, 28, 20 OBR 213, 485 N.E.2d 704, superseded by rule on other grounds.  See also *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 650, 635 N.E.2d 331 ("[P]unitive damages are awarded as a mere incident of the cause of action in which they are sought.  * * * Thus, compensable harm stemming from a cognizable cause of action must be shown to exist before punitive damages can be considered").

**{¶ 14}** According to the jury interrogatories in this case, the jury found in Niskanen's favor on only one cause of action, the negligent failure to train. However, because the jury determined that Paul was also negligent and that he

---

{¶ b} "Subject to division (E) of this section, punitive or exemplary damages are not recoverable from a defendant in question in a tort action unless both of the following apply:

{¶ c} "(1) The actions or omissions of that defendant demonstrate malice or aggravated or egregious fraud, or that defendant as principal or master knowingly authorized, participated in, or ratified actions or omissions of an agent or servant that so demonstrate.

{¶ d} "(2) The trier of fact has returned a verdict or has made a determination pursuant to division (B)(2) or (3) of this section of the total compensatory damages recoverable by the plaintiff from that defendant."

was 60 percent liable for his own death, Niskanen was precluded from recovering compensatory damages under that cause of action. See R.C. 2315.35 (when the plaintiff's share of fault is greater than the defendant's, the plaintiff shall recover nothing). Because she received no compensatory damages, Niskanen was simply ineligible for punitive damages, regardless of whether Giant Eagle acted with actual malice.

{¶ 15} Niskanen attempts to avoid this result by arguing that, under this court's decision in *Schellhouse v. Norfolk & W. Ry. Co.* (1991), 61 Ohio St.3d 520, 575 N.E.2d 453, "she is entitled to recover those compensatory damages without regard to Paul's own negligence if the jury concludes that Giant Eagle exhibited recklessness or actual malice."

{¶ 16} Niskanen confuses both the law in this area and the facts of her case. In *Schellhouse*, we held that "in a civil action for tort or wrongful death, a finding by the jury that a plaintiff (or plaintiff's decedent) was comparatively negligent will not defeat or diminish the recovery of damages *where the defendant's intentional tort, committed with actual malice, proximately caused the injury*." (Emphasis added.) Id. at 525, 575 N.E.2d 453. In short, we articulated the very principle that was later codified in R.C. 2315.32(B): comparative negligence may be asserted as an affirmative defense to all torts except intentional torts. Under this principle, Niskanen would have been able to recover compensatory damages if she had pursued and prevailed on an intentional-tort action, regardless of whether Paul was more than 50 percent liable for his own death.

{¶ 17} However, the record shows that Niskanen dismissed all the intentional-tort claims presented in her amended complaint on the morning of trial. Further, the jury interrogatories reveal that, of the remaining causes of action, the jury found in her favor only on the claim of negligent failure to train.

6

**{¶ 18}** Niskanen now appears to be arguing that she pursued a theory of malicious conduct throughout, but that does not somehow transform her negligence cause of action into an intentional tort, and it certainly does not mean that she succeeded on an intentional-tort action at trial. The simple fact is that the jury found in her favor only on a negligence cause of action, and punitive damages are available in negligence actions only if compensatory damages are awarded. R.C. 2315.21(C)(1) and (2). Because the jury did not award her any compensatory damages, Niskanen may not recover punitive damages.

*B. Self-defense in negligence causes of action*

**{¶ 19}** The second issue before us is whether a defendant may raise self-defense as an affirmative defense to a negligence cause of action. Giant Eagle argues that this court has already recognized that self-defense applies to negligence causes of action and that the defense is relevant in view of the facts of this case. Niskanen maintains that self-defense is inconsistent with negligence causes of action when the defendant fails to admit that it acted to intentionally injure the plaintiff and that, even if self-defense may be raised, it is not relevant to the facts of this case.

**{¶ 20}** Giant Eagle asserts the more persuasive argument. We addressed the issue of when self-defense may be raised, albeit in general terms, in *Goldfuss v. Davidson* (1997), 79 Ohio St.3d 116, 679 N.E.2d 1099. In that case, the plaintiff brought a wrongful-death action, alleging that the defendant had negligently shot and killed the decedent when he fired warning shots at individuals, including the decedent, whom he suspected were attempting to burglarize his barn. After the trial court refused to instruct the jury regarding self-defense, we reviewed the case to determine whether such an instruction was appropriate.

**{¶ 21}** We affirmatively held that "a defendant may be relieved of liability for tortious conduct by proving that such conduct was in self-defense." Id. at 124.

Indeed, self-defense is a "justification defense"; when relevant, it functions as an excuse for an otherwise wrongful act, not as a denial or contradiction of the evidence establishing that the act was committed. *State v. Poole* (1973), 33 Ohio St.2d 18, 19, 62 O.O.2d 340, 294 N.E.2d 888. There is no reason to limit this defense to one particular type of case or another so long as the defendant's actions can fairly be said to have been committed in self-defense.

{¶ 22} However, relevance is key; the defense must be supported by the facts of the case for the trial court to instruct the jury on self-defense. "[A] trial court need not instruct the jury where there is insufficient evidence to support an issue. In reviewing a record to ascertain whether sufficient evidence exists to support the giving of an instruction, an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction." *Goldfuss*, 79 Ohio St.3d at 124, 679 N.E.2d 1099. Thus, the issue of whether self-defense applies to a particular tort claim is to be determined on a case-by-case basis by examining whether the evidence supports the defense; there is no per se rule against asserting self-defense in negligence actions. Following this rule, we reviewed the record in *Goldfuss* and held that self-defense was not applicable because the defendant was not in danger of death or serious bodily harm at the time he fired the warning shots. Id.

{¶ 23} We apply this case-by-case factual analysis to the present matter, keeping in mind that a defendant claiming self-defense must prove "(1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger." *State v. Barnes* (2002), 94 Ohio St.3d 21, 24, 759 N.E.2d

1240, citing *State* v. *Robbins* (1979), 58 Ohio St.2d 74, 12 O.O.3d 84, 388 N.E. 2d 755, paragraph two of the syllabus.

{¶ 24} Niskanen presented three claims to the jury: (1) negligent failure to train, (2) undue restraint, and (3) spoliation of evidence. The parties agree that the self-defense instruction was not intended to apply to the spoliation claim. However, it is not clear from the jury instructions whether self-defense was intended to apply to both or only one of the other two claims. Further, although the jury found that Giant Eagle had acted in self-defense, it is not clear from the interrogatories whether this finding was directed to one or both claims. In view of this ambiguity, we will address both claims in our analysis of whether the instruction was warranted.

{¶ 25} In her cause of action for negligent failure to train, Niskanen alleged that Giant Eagle had a duty to train its employees in industry-standard shoplifter-apprehension techniques, that it breached this duty by failing to give that training, and that this failure proximately caused the employees to pursue and accost Paul in such a way as to cause his death. Viewing the claim in this manner, we find it clear that self-defense is not a proper defense to the alleged wrongful act, the failure to train. It simply makes no sense to say that Giant Eagle failed to provide the appropriate training to defend itself from Paul's attack. The failure to train occurred well before the attack began and was not performed in response to Paul's actions. To the extent that the trial court offered the self-defense instruction for this claim, it erred.

{¶ 26} However, this error is harmless. As discussed above, Giant Eagle was deemed to be negligent under this cause of action, but the jury found that it was only 40 percent liable for Paul's injuries. Thus, the application of the comparative-negligence defense already completely erased the consequences of the jury's finding of negligence against Giant Eagle. Because Giant Eagle did not need to rely on self-defense to avoid liability on this claim, Niskanen was not

prejudiced by the erroneous self-defense instruction and is therefore not entitled to reversal of the jury verdict in that regard. See *Smith v. Flesher* (1967), 12 Ohio St.2d 107, 110, 41 O.O.2d 412, 233 N.E.2d 137 ("It is an elementary proposition of law that an appellant, in order to secure reversal of a judgment against him, must not only show some error but must also show that that error was prejudicial to him").

{¶ 27} Self-defense is more relevant to Niskanen's claim for undue restraint. Pursuant to R.C. 2935.041(A), a merchant with probable cause to suspect shoplifting may detain the suspect in a reasonable manner and for a reasonable length of time. Niskanen claimed that Giant Eagle's employees exceeded their authority under this statute by detaining Paul in an unreasonable manner and for an unreasonable time.

{¶ 28} The restraint at issue here occurred after Giant Eagle's employees attempted to detain Paul outside the store for shoplifting. Instead of submitting to the employees' requests to stop, Paul punched both the first employee who came toward him and the manager who intervened, and also fought with two passersby who came to the aid of the employees. After a short but intense altercation, the men held Paul on the ground as he continued to struggle.

{¶ 29} These facts present sufficient evidence to support the self-defense instruction issued by the trial court under the *Goldfuss* analysis. Reasonable minds could conclude that (1) the employees did not start the fight, since Paul threw the first punch, thereby escalating an otherwise peaceful encounter into a violent one; (2) the employees had a bona fide belief that they were in danger of great bodily harm, since Paul had punched each of them and continued to fight as others tried to restrain him, and that the only way of ending the fight was to subdue and restrain Paul; and (3) the employees did not violate a duty to retreat or avoid the danger, since they were acting within their rights to pursue and detain

Paul under R.C. 2935.041 and then merely responded to Paul's violent attacks until he was subdued.

{¶ 30} Although Niskanen alleges that the employees used more force than was necessary to defend themselves and that they continued to use force after the threat was eliminated, these are factual issues for the jury to consider in determining whether the employees acted in self-defense, not arguments against giving a self-defense instruction in the first place. Therefore, the trial court did not err when it instructed the jury on self-defense on the claim for undue restraint.

{¶ 31} To avoid this result, Niskanen claims that Giant Eagle can assert self-defense only if it acknowledges that its employees intentionally used deadly force (in this case, a chokehold) to subdue Paul and that it is precluded from doing so because it claimed throughout the case that Paul's death was an accident. We disagree. While a defendant claiming self-defense typically admits intentionally using force to repel a danger, see *Barnes*, 94 Ohio St.3d at 24, 759 N.E.2d 1240, we have never stated that a defendant must admit intending to cause the specific injury that resulted in order to receive the benefit of the defense. In other words, Giant Eagle was required to admit only that its employees intentionally held down Paul to subdue him, which it did, not that the employees intended to hold him to the ground until he died. Again, the issue of whether the employees used excessive force is an issue of fact for the jury to consider, not a factor in determining whether a self-defense instruction should be given.

{¶ 32} Because the trial court's only errors relating to the self-defense instruction were harmless, there is no reversible error pertaining to this proposition of law.

### C. Undue-restraint cause of action

{¶ 33} The final issue is whether a plaintiff may bring a cause of action for undue restraint under R.C. 2935.041(A), which creates a privilege for a merchant to detain an individual in a reasonable manner and for a reasonable

length of time when the merchant has probable cause to believe that the individual is shoplifting. In her undue-restraint claim, Niskanen alleged that Giant Eagle exceeded its rights under this statute by using unreasonable forms of restraint on Paul for an unreasonable amount of time. Giant Eagle argues here that this privilege for merchants cannot be used as a sword against them, and thus Niskanen was not entitled to assert a cause of action grounded in R.C. 2935.041.

{¶ 34} However, Giant Eagle has raised this argument for the first time in this court, and it is well settled that "[a] party who fails to raise an argument in the court below waives his or her right to raise it here." *State ex rel. Zollner v. Indus. Comm.* (1993), 66 Ohio St.3d 276, 278, 611 N.E.2d 830. We therefore decline to consider this issue.

## IV

{¶ 35} For the foregoing reasons, we reverse the judgment of the court of appeals and reinstate the judgment of the trial court.

Judgment reversed.

LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

PFEIFER, J., dissents.

———————————

**PFEIFER, J., dissenting.**

{¶ 36} A man is dead over a bag of groceries.

{¶ 37} We cannot know what was going on in Paul Niskanen's mind as he entered the Rootstown Giant Eagle, whether he intended to purchase or purloin the products he would place in his shopping cart. If Niskanen intended to shoplift from the get-go, surreptitiousness was not his modus operandi. He filled his shopping cart and went through a checkout lane; the cashier rang up a total of $289.02 of groceries. When the cashier asked him for his Giant Eagle Advantage card (a customer discount and rewards card), Niskanen told her that he would

have to go out to his car to get it. When he returned inside the store without it, the cashier suggested that he go to the customer service area to get a replacement card. Niskanen did so. He gave the customer service representative his own name; although she could not find his name in the database (even though Niskanen *had* been issued a Giant Eagle Advantage card), she issued him a temporary card. When he returned to the checkout lane, the cashier was busy with another customer. Then, Niskanen left the store with his cart, and began to unload grocery bags into his car, which was parked in the fire lane adjacent to the store.

{¶ 38} After Niskanen had placed just one bag of groceries in his car trunk, John Maczko, the store manager, emerged from the store and yelled, "Stop the shoplifter!" to Jonathan Stress, another employee who happened to be in the parking lot. Niskanen had had enough: he closed his trunk and ran toward the driver's door of his car, leaving the bulk of his $289.02 worth of groceries abandoned in his shopping cart. Niskanen made no threats: his only apparent desire was to leave the area. But Giant Eagle employees set upon him. Niskanen reacted to *their* aggression.

{¶ 39} Self-defense should not have been available as an affirmative defense to Giant Eagle in this case. The majority rightly recognizes that "to the extent that the trial court offered the self-defense instruction for [the negligent-failure-to-train] claim, it erred." I disagree, however, with the majority's conclusion that this error was harmless. The jury found that placing blame in this case was a tight call, attributing 60 percent of the proximate cause to Niskanen and 40 percent to Giant Eagle. The jury's belief that Giant Eagle had self-defense available to it as an affirmative defense could easily have played a pivotal role in assigning the ultimate percentages.

{¶ 40} I further dissent from the majority's conclusion that self-defense was relevant to Niskanen's claim for undue restraint. The only relevant question

for the jury was whether, given the facts of this particular situation, Giant Eagle employees detained Niskanen in a reasonable manner and for a reasonable length of time. The physical altercation occurred because Giant Eagle employees attempted to detain Niskanen. Niskanen's physical response to that attempted detention would be relevant for the jury in determining the reasonableness of the employees' methods. But it does not give rise to a self-defense instruction. A jury instruction on self-defense was superfluous, contradictory, and confusing; the right of store employees to proactively detain a suspected shoplifter under R.C. 2935.041 is at odds with the reactive nature of self-defense. The trial judge's instruction conflated reasonableness of restraint and self-defense. The defense to a claim of undue restraint is that the degree of restraint employed was reasonable. Giant Eagle did not require another legal excuse, self-defense, to try to legitimize its role in this tragedy. The court of appeals correctly ordered a new trial.

{¶ 41} When Niskanen attempted to leave the Giant Eagle premises, Giant Eagle personnel had his name. They had easy access to his license plate number. They had most of the goods Niskanen had placed in his shopping cart. Niskanen could have been prosecuted for petty theft, a first-degree misdemeanor. The sentence for a first-degree misdemeanor is no more than 180 days of confinement. Instead, Niskanen paid with his life. For one bag of groceries.

_____

Hahn, Loeser & Parks, L.L.P., Steven A. Goldfarb, Robert J. Fogarty, and Eric B. Levasseur, for appellee.

Marcus & Shapira, L.L.P., Bernard D. Marcus, Scott D. Livingston, and Stephen S. Zubrow; and Rademaker, Matty, McClelland & Greve and Robert C. McClelland, for appellant.

Davis & Young and Richard M. Garner, urging reversal for amicus curiae Ohio Association of Civil Trial Attorneys.

Linda S. Woggon, urging reversal for amicus curiae Ohio Chamber of Commerce.

Vorys, Sater, Seymour & Pease, L.L.P., Richard D. Schuster, and Michael J. Hendershot, urging reversal for amici curiae Ohio Council of Retail Merchants and Ohio Grocers Association.

————————————————