[Cite as *State v. Morefield*, 2015-Ohio-448.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 26155 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2013-CRB-1386 |
| v. | : | |
| | : | (Criminal Appeal from Montgomery |
| ANDREW T. MOREFIELD | : | Municipal Court—Eastern Division) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 6th day of February, 2015.

. . . . . . . . . . .

ROBERT B. COUGHLIN, Atty. Reg. No. 0003449, 6111 Taylorsville Road, Huber Heights, Ohio 45424
     Attorney for Plaintiff-Appellee

CHRIS BECK, Atty. Reg. No. 0081844, 1370 North Fairfield Road, Suite C, Beavercreek, Ohio 45432
     Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, J.

{¶ 1} Defendant-appellant Andrew Morefield appeals from his conviction and sentence for Aggravated Menacing, following a jury trial. Morefield contends that his conviction is not supported by sufficient evidence, that his conviction is against the manifest weight of the evidence, and that the trial court erred by denying his request for jury instructions on the affirmative defenses of self-defense and the defense of another.

{¶ 2} We conclude that Morefield's conviction for Aggravated Menacing is supported by sufficient evidence in the record, and is not against the manifest weight of the evidence. We further conclude that the trial court did not err in denying Morefield's request for jury instructions on the affirmative defenses of self-defense and the defense of another, because Morefield did not admit to having committed the charged offense. Accordingly, the judgment of the trial court is Affirmed.

## I. The Confrontation

{¶ 3} The confrontation resulting in Morefield's conviction began when two teen-aged boys, "Jr.", age 14, and his friend, "D.", also age 14, were walking on Longford Avenue around 4:30 in the afternoon of September 17, 2013. When they were on the sidewalk across the street from 6112 Longford, where Morefield lived, an interaction occurred between Jr. and one of several young men on the property at 6112 Longford. There is a dispute whether Jr. actually said anything, or whether he just looked at Brandon Davis, then age 18, one of the young men at 6112 Longford, in a way that made Davis uncomfortable. There is general agreement, however, that Davis said to Jr.:

"What the f\*\*k[1] are you looking at?"

{¶ 4} Jr. and D. continued walking down the sidewalk, stopping three or four houses past 6112 Longford. Jr. called his father, "Sr.", who lived nearby, telling him: "Dad, there's guys down here trying to get us beat up or something."

{¶ 5} Sr., who was age 31, with a muscular build, drove himself and his 33-year-old brother to 6112 Longford. The drive took about two minutes. Meanwhile, "C.", age 15, another friend of Jr., proceeded on foot to 6112 Longford, arriving about the same time. Sr. wanted to know who had spoken to his son. Brandon Davis readily admitted that he was the one who had spoken to Jr.

{¶ 6} According to Davis, Sr. "got in my face, started poking me in the chest," "he was telling me to fight him, and I told him I didn't want to fight him. I didn't see any point in it." Davis testified: "I felt extremely intimidated for real. I felt like my life was in danger."

{¶ 7} While this was going on, there was a lot of shouting and cussing on both sides. Andrew Morefield, age 21, who was present, concluded that Sr. had come to fight. He instructed his brother, who had a cell phone in his hand, to call the police. The brother, who had already decided to call the police, did so.

{¶ 8} Meanwhile, Andrew Morefield went inside the house and obtained a firearm from where it was stored on the wall. This weapon, which was admitted in evidence, was described by a number of witnesses as an assault rifle, similar, at least, to an AK-47. Morefield obtained a magazine from a different location within the house, and attached it

---

[1] Because our opinions are widely available on the internet, we have not reproduced the full word here. It is clear that the actual word was spoken.

to the rifle. Neither the rifle nor the magazine had any ammunition inside. In fact, Morefield testified that he had no bullets at the house at that time.

{¶ 9} Andrew Morefield exited the front door with the rifle. He remained just outside the front door, armed with the rifle. He and the others at his house told Sr. and his party repeatedly to leave, but they would not. Sr., seeing the firearm, began moving to his right, away from the others in his group, to distract Andrew Morefield from Jr.

{¶ 10} After a bit, Andrew Morefield, realizing that Sr. and his party were not going to leave, set the rifle down on the ground next to the house, and waited for the police to arrive. The police arrived within about fifteen minutes. They took written statements from anyone who chose to give a statement.

{¶ 11} There are a couple matters upon which the testimony of the participants in the two groups diverged. One of these was the location of Sr. The Morefield party's witnesses testified that Sr. came up on the driveway when he confronted Brandon Davis, and remained on the Morefield property. Sr.'s party's witnesses testified that all of them, including Sr., remained off the Morefield property, on the sidewalk in front of the house next door. Sr., though, did admit that when he was separating himself from the rest of his party, he may have come slightly off the sidewalk onto the Morefield yard.

{¶ 12} The most important discrepancy in the testimony is that Sr.'s party's witnesses testified that Andrew Morefield pointed the rifle at them, putting them all in fear of being shot; whereas the Morefield party's witnesses testified that Andrew Morefield never pointed the rifle at anyone.

## II. The Course of Proceedings

{¶ 13} Andrew Morefield was arrested and charged with five counts of Aggravated Menacing, in violation of R.C. 2903.21, misdemeanors of the first degree. He was tried to a jury.

{¶ 14} Morefield requested jury instructions on the affirmative defenses of self-defense and the defense of others. The trial court denied his request, opining that: "the situation does not rise to the level of the – that is required for the requested instruction."

{¶ 15} The jury found Morefield guilty on all five counts. The trial court imposed concurrent sentences of 180 days in jail, with 150 days suspended, for a total sentence of 30 days in jail.

{¶ 16} From his conviction and sentence, Morefield appeals.

## III. Morefield's Convictions Are Supported by Sufficient Evidence, and Are Not Against the Manifest Weight of the Evidence

{¶ 17} Morefield's First and Second Assignments of Error are as follows:

THE STATE PRESENTED INSUFFICIENT EVIDENCE TO ESTABLISH EVERY ESSENTIAL ELEMENT OF AGGRAVATED MENACING BEYOND REASONABLE DOUBT.

MR. MOREFIELD'S CONVICTION FOR AGGRAVATED MENACING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 18} When a defendant challenges the sufficiency of the evidence, he is arguing

that the State presented inadequate evidence on at least one element of the offense to sustain the verdict as a matter of law. *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist.2000). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 19} Morefield points to the evidence he presented that he never pointed the rifle at anyone. But the State presented the testimony of each victim that Morefield pointed the rifle in their direction, and each testified to having been in fear that he would be shot and severely wounded, or killed. The jury was free to credit the State's witnesses.

{¶ 20} Morefield argues that the testimony of the State's witnesses is not worthy of belief, because none of them ran away, or called the police. Again, it was for the jury to determine whether to credit the State's witnesses, who may, in the moment, have feared that turning and running would cause Morefield to open fire. The jury could also credit Sr.'s testimony that his act of separating himself from the group including his son was intended to distract Morefield's attention from his son. There was testimony that Morefield did, in fact, follow Sr. with the pointed rifle, which could have caused the other members of Sr.'s party to prefer to avoid drawing attention to themselves by turning and running, or, for that matter, by using a cellphone to call the police.

{¶ 21} We conclude that there is evidence in the record, in the form of the

testimony of the State's witnesses, that, if believed, would convince the average mind of Morefield's guilt beyond a reasonable doubt. Morefield's First Assignment of Error is overruled.

**{¶ 22}** "A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *State v. Cassell*, 2d Dist. Clark No. 09CA0064, 2011-Ohio-23, ¶ 46. When a conviction is challenged on appeal as being against the manifest weight of the evidence, " '[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶ 23}** In arguing that his conviction is against the manifest weight of the evidence, Morefield points to a few inconsistencies in the testimony of the State's witnesses. Some of these involve characterizations; for example, Jr. having testified that his father only approached the other group to have a casual conversation, while C. testified that Sr. was aggressive in his approach. C. did testify, though, that Sr. said: "Leave us the hell alone and don't talk to my child again," and also testified that there was nothing threatening in what Sr. said. Other inconsistencies involved minor points, such as what exactly Sr. was wearing.

**{¶ 24}** On the key point, all of the State's witnesses were agreed; Morefield pointed the rifle at their group, causing them to fear they would be shot. We conclude

that this is not the exceptional case where a jury has lost its way, creating a manifest miscarriage of justice. Morefield's Second Assignment of Error is overruled.

**IV. Because Morefield Did Not Admit to Having Committed the Act Constituting the Offense, He Was Not Entitled to Jury Instructions on the Affirmative Defenses of Self-Defense and the Defense of Others**

{¶ 25} Morefield's Third Assignment of Error is as follows:

TRIAL COURT ERRED WHEN IT FAILED TO PRESENT A JURY INSTRUCTION ON SELF-DEFENSE AND DEFENSE OF OTHERS WHERE THE EVIDENCE SUPPORTED AN INSTRUCTION.

{¶ 26} The State argues that threats of deadly force, i.e., Aggravated Menacing, cannot be justified by the defenses of self-defense or the defense of others. Courts of appeals have held to the contrary. *See, e.g., State v. Lundt*, 180 Ohio App.3d 672, 2009-Ohio-416, 906 N.E.2d 1182, ¶ 21 (7th Dist.). The rule of law proposed by the State would have the illogical result that one is privileged to use actual force to repel an attack, but one is not privileged to first use the mere threat of force in an attempt to repel the attack. Consider, for example, a man and his family with their back against a wall, confronted by a larger crowd carrying baseball bats, with the expressed intention of beating the man and his family to death. If the man had access to a firearm, he would be privileged, under the rule of law proposed by the State, to open fire upon the crowd threatening himself and his family, but would not have the privilege to first threaten to shoot. The law should encourage, not discourage, a first resort to less extreme

measures in self-defense.

{¶ 27} The State cites *State v. Turner*, 2d Dist. Montgomery No. 24322, 2011-Ohio-5417, ¶ 15, for the proposition that:

An affirmative defense, such as self-defense or defense of another, is in the nature of a confession and avoidance, where the accused admits that he engaged in the conduct alleged but claims that he was legally justified in doing so. *State v. Rhodes* (1992), 63 Ohio St.3d 613, 625. Such an instruction is not appropriate where the defendant denies engaging in the conduct alleged upon which the criminal charge is based. *State v. McGhee*, Montgomery App. No. 23226, 2010-Ohio-977, at ¶ 54.

{¶ 28} *State v. Rhodes*, upon which we relied in *Turner*, relies upon *State v. Poole*, 33 Ohio St.2d 18, 19, 294 N.E.2d 888 (1973), in which the court characterized an affirmative defense as one "which the defendant claims exempts him from liability *even if it is conceded that the facts claimed by the prosecution are true.*" (Emphasis in *Rhodes*.) The "even if" formulation could lend itself to an interpretation that the concession involved is hypothetical, rather than an actual admission by the defendant; i.e., hypothetically, if the State has proven that the defendant committed the act, then the defendant was acting in self-defense.

{¶ 29} None of the cases cited in *Rhodes* clearly hold that a defendant must admit to having committed the criminal act, before asserting an affirmative defense. In the first case cited, for example, *Walden v. State,* 47 Ohio St.3d 47, 50, 547 N.E.2d 962 (1989), the court held that a person acquitted by reason of self-defense can nevertheless be a wrongfully imprisoned individual for purposes of recovering compensation from the State.

And in the leading case cited in *Rhodes*, *State v. Poole*, 33 Ohio St.2d 18, 294 N.E.2d 888, the Supreme Court held that the trial court erred by instructing the jury that the defendant in a Murder prosecution had the burden of proving that his killing of the victim was accidental, since accident is not an affirmative defense.

{¶ 30} Nevertheless, we have found one decision of the Supreme Court of Ohio that we find instructive. That case is a civil case, *Niskanen v. Giant Eagle, Inc.*, 122 Ohio St.3d 486, 2009-Ohio-3626, 912 N.E.2d 595, in which the Supreme Court held, at ¶ 31, that a defendant in a tort case was required to admit that it committed the tortious act before it could assert the defense of self-defense. We conclude, therefore, that a defendant in a criminal case must admit commission of the act constituting the criminal offense, before affirmative defenses – here, self-defense and the defense of others – may be submitted to the jury.

{¶ 31} As the State notes, the act constituting the offense in this case was pointing the rifle at the victims. Morefield denied that he pointed the rifle at anyone. Therefore, he was not entitled to an instruction on the affirmative defenses of self-defense and the defense of others.

{¶ 32} Morefield's Third Assignment of Error is overruled.


# I. Conclusion

{¶ 33} All of Morefield's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

DONOVAN and WELBAUM, JJ., concur.

Copies mailed to:

Robert B. Coughlin
Chris Beck
Hon. James D. Piergies