[Cite as *State v. Scofield*, 2021-Ohio-569.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. 2020 CA 00025 |
| DAVID SCOFIELD | |
| Defendant-Appellant | O P I N IO N |

| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Appeal from the Fairfield County Court of Common Pleas, Case No. 16 CR 475 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | March 1, 2021 |

APPEARANCES:

| | |
|---|---|
| For Plaintiff-Appellee | For Defendant-Appellant |
| R. KYLE WITT<br>Fairfield County Prosecuting Attorney | THOMAS C. LOEPP, CO., LPA<br>3580 Darrow Road<br>Stow, Ohio 44224 |
| MARK A. BALAZIK<br>Assistant Prosecuting Attorney<br>239 East Main Street, Suite #101<br>Lancaster, Ohio 43130 | |

*Hoffman, J.*

**{¶1}** Defendant-appellant David Scofield appeals the judgment entered by the Fairfield County Common Pleas Court dismissing his petition for post-conviction relief (hereinafter "PCR") without a hearing.    Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

**{¶2}** The facts of this case as set forth in our opinion on Appellant's direct appeal are as follows:

**{¶3}** On November 4, 2016, shortly before 1:00 a.m., Pickerington Police Officer Mercedes Gavins was on patrol near Hill Road North when she observed the driver of a maroon Saturn, later identified as Appellant, weaving within his lane. As she followed, the vehicle drifted left of center, crossing the double yellow lane marking. Gavins notified dispatch she was going to initiate a traffic stop, and provided a description and plate number for the Saturn.

**{¶4}** Gavins activated the overhead lights on her cruiser signaling Appellant to pull over. Instead of immediately doing so, Appellant slammed on his brakes, nearly causing Gavins to collide with the back end of the Saturn. Appellant continued a bit further before pulling over on Diley Road. Diley Road is two lanes in each direction with a concrete median, raised curbs, and no shoulder. Before Gavins got out of her cruiser, dispatch advised the Saturn was registered to 85-year-old Dorothy Scofield.

**{¶5}** As Gavins approached the vehicle, she could see Appellant was the only occupant. Appellant was moving about the cabin area, at one point ducking below the front seat. Appellant had the window rolled hallway down as she approached. Gavins advised Appellant the reasons for the stop were a marked lanes violation and his abrupt stop. Appellant explained he was weaving due to his operation of the car's radio. Gavins

asked Appellant for his license and proof of insurance. Appellant told Gavins his license was in his pocket, but made no move to retrieve it. Gavins asked Appellant for his license three times before he finally gave it to her.  Gavins also had to ask Appellant for his proof of insurance three times before he finally gave it to her.  In spite of Appellant's odd behavior, Gavins did not detect any signs of intoxication. She took his license and proof of insurance back to her cruiser, intending to issue a citation for the lanes of travel violation and send Appellant on his way.

{¶6}   Once in her cruiser, Gavins relayed Appellant's information to dispatch. Dispatch advised Appellant had two arrest warrants in Akron and an extensive criminal history including impersonating an officer, obstruction, and resisting arrest. Gavins was further cautioned Appellant may be armed. Akron confirmed both warrants with dispatch. Gavins requested backup and Officer Smith arrived to assist.

{¶7}   Gavins and Smith approached Appellant's car together and asked him to step out of the vehicle so they could place him under arrest on the warrants. Appellant responded the warrants were "bogus," denied he had any warrant for his arrest, and further advised the officers he was a law enforcement officer with 20 years experience. Appellant refused to get out of the car. The officers again asked Appellant to get out of the car. He again refused and locked his doors. When Gavins reached in to unlock the door, Appellant slapped her hand away and rolled up the window, nearly catching Gavin's fingers. The officers pulled out batons and advised Appellant he could either get out of the car voluntarily or they would break the car window and remove him from the car. As Smith counted down from three, Appellant opened the door and got out. He was cuffed and placed in Gavins's cruiser without incident. Additional officers and Appellant's

girlfriend, who had been driving her car ahead of Appellant, arrived on the scene shortly thereafter.

**{¶8}** Because Gavins's dash camera was not functioning, the time between Gavin pulling Appellant over and Appellant's arrest was unclear. According to Gavins's testimony at the suppression hearing, it was mere minutes. At 1:27 a.m., dispatch indicated Akron would not extradite Appellant, but three minutes later dispatch indicated Akron had changed its stance and would extradite.

**{¶9}** Due to Appellant's arrest, the fact the Saturn was impeding traffic, and because the record owner of the Saturn lived 40 minutes away, Gavins called for a tow truck to impound the vehicle. In the meantime, officers conducted an inventory search of the car. During the search officers discovered a loaded Glock 23 handgun under the front seat and a polymer knife in a compartment below the steering wheel. Officers further discovered a police scanner below the dash tuned to the officer's frequency. Additional polymer knives, a SBR AR-15 automatic rifle with two magazines, additional assorted magazines and ammunition were discovered in the trunk of the car.

**{¶10}** Appellant was transported to the Pickerington Police Station where he was provided with Miranda warnings. Appellant advised he possessed the concealed carry and manufacturer licenses required to possess the weapons. Further investigation revealed both licenses were void.

**{¶11}** Appellant was issued a citation for the marked lanes violation. Gavins forwarded a report requesting further charges based on Appellant's possession of the weapons to the City of Lancaster Prosecutor's Office. The Fairfield County Grand Jury subsequently returned an indictment charging Appellant with one count of improper

handling of a firearm in a motor vehicle, a felony of the fourth degree, and one count of unlawful possession of a dangerous ordinance, a felony of the fifth degree.

{¶12} Appellant pled not guilty to the charges. On December 15, 2016, Appellant filed a motion to suppress arguing there was insufficient probable cause to stop his vehicle and further, any statements he made prior to receiving Miranda warnings should be suppressed. Appellant supplemented the motion on April 10, 2017, additionally arguing the Pickerington Police Department violated its own impound policies and procedures, and therefore any evidence recovered as a result of the inventory search must be suppressed.

{¶13} A hearing was held on the suppression motion on April 10, 2017. On May 9, 2017, the trial court overruled Appellant's motion with the exception of any pre-Miranda statements.

{¶14} On January 29, 2018, Appellant entered a no contest plea to improper handling of a firearm in a motor vehicle. The trial court found appellant guilty and sentenced him to five years community control. The State dismissed the second count of the indictment.

{¶15} Appellant filed an appeal to this Court from the judgment of conviction and sentence, assigning as error, "Because the mere arrest of a motor vehicle's operator should not automatically trigger police impound of that car, a warrantless inventory search conducted in such a scenario violates the Fourth Amendment and Section 14, Article I of the Ohio Constitution." This Court found the impound of the vehicle and subsequent inventory search to be lawful, and affirmed. *State v. Scofield,* 5th Dist. Fairfield No. 18-CA-06, 2019-Ohio-375.

{¶16} On March 21, 2019, Appellant filed a PCR petition, alleging counsel was ineffective for failing to present evidence police began the inventory search of his car prior to receiving confirmation of the warrants from Akron. He alleged counsel failed to present evidence of "radio chatter" via dash cam videos which would have demonstrated police began to search his car while dispatch waited for Akron police to confirm the validity of the warrants and to decide if they desired Pickerington police to hold Appellant for pickup. The State filed a response on May 2, 2019, arguing Appellant failed to support his petition with evidentiary support.

{¶17} Appellant filed a motion for leave to file an amended petition on May 2, 2019. The amended petition was attached to his motion. Attached to the motion were three CD discs purporting to be dash cam video from the Pickerington police. Also attached to the motion was a timeline of unknown origin of events of the traffic stop, taken from videos on Disc 3 of the attached discs.

{¶18} Appellant also attached his own affidavit to his petition. In his affidavit, he averred while confined to the back of the police cruiser, he could hear radio communication which made it clear Pickerington law enforcement could not readily verify the status of the Akron warrant. He averred he eventually heard Pickerington state they had confirmation of the warrant from Akron, but prior to such confirmation he observed Pickerington police officers enter and search his car. He stated he reviewed all video and/or audio recordings created on the night in question, and the timeline presented in the recordings verifies police searched his car prior to confirmation of the warrants.

{¶19} As further evidentiary support for his petition, Appellant attached an affidavit of his girlfriend, Elena LaRue. She averred before she was told about the active warrants,

she heard two officers state in reference to Appellant, "We will find something to hold him on." Aff. LaRue, ¶5. She averred an officer told her they were waiting to verify the validity of the warrants out of Akron, she could pick Appellant up at the Pickerington Police Department if there was not a warrant, but if there was a warrant he would be taken to the Fairfield County Jail. She averred while she was communicating with police, other officers opened Appellant's car doors and looked inside.

{¶20} The State filed a response to Appellant's motion to file an amended PCR petition on January 9, 2020. The trial court granted Appellant leave to file the amended petition on March 5, 2020. The amended petition was filed on March 5, 2020, and the State responded on March 27, 2020.

{¶21} On May 14, 2020, the trial court dismissed Appellant's petition without a hearing. The court found Appellant's claims were barred by res judicata. The court further found Appellant had not demonstrated ineffective assistance of counsel because even considering Appellant's newly proffered evidence, the search was lawful pursuant to the inevitable discovery rule.

{¶22} It is from the May 14, 2020 judgment of the Fairfield County Common Pleas Court Appellant prosecutes his appeal, assigning as error:

> I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN DENYING SCOFIELD'S PETITION FOR POST-CONVICTION RELIEF WITHOUT FIRST GRANTING A HEARING AS TO SAME.

II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN PERMITTING THE STATE TO FILE ITS RESPONSE TO SCOFIELD'S PETITION FOR POST-CONVICTION RELIEF.

III. SCOFIELD'S COUNSEL WAS INEFFECTIVE IN NOT SEEKING TO STRIKE THE STATE'S UNTIMELY RESPONSE TO HIS PETITION FOR POST-CONVICTION RELIEF.

IV. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN DENYING SCOFIELD'S PETITION FOR POST-CONVICTION RELIEF ON THE BASIS OF RES JUDICATA.

V. THE STATE COMMITTED PROSECUTORIAL MISCONDUCT IN NOT TIMELY PRODUCING THE AUDIOS/VIDEOS FROM THE EVENING OF THE ARREST OF SCOFIELD, AND IN NOT CORRECTING THE RECORD.

VI. SCOFIELD'S COUNSEL WAS INEFFECTIVE IN NOT RAISING PROSECUTORIAL MISCONDUCT IN THE STATE'S UNTIMELY PRODUCTION OF THE AUDIOS/VIDEOS FROM THE EVENING OF THE ARREST OF SCOFIELD, AND IN NOT CORRECTING THE RECORD.

VII. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN RELYING ON THE DOCTRINE OF INEVITABLE DISCOVERY.

I., IV., VII.

{¶23} In his first, fourth, and seventh assignments of error, Appellant argues the trial court erred in dismissing his petition without a hearing.

**{¶24}** R.C. 2953.21 governs petitions for post-conviction relief, and provides in pertinent part:

(A)(1)(a) Any person who has been convicted of a criminal offense or adjudicated a delinquent child and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States, any person who has been convicted of a criminal offense and sentenced to death and who claims that there was a denial or infringement of the person's rights under either of those Constitutions that creates a reasonable probability of an altered verdict, and any person who has been convicted of a criminal offense that is a felony and who is an offender for whom DNA testing that was performed under sections 2953.71 to 2953.81 of the Revised Code or under former section 2953.82 of the Revised Code and analyzed in the context of and upon consideration of all available admissible evidence related to the person's case as described in division (D) of section 2953.74 of the Revised Code provided results that establish, by clear and convincing evidence, actual innocence of that felony offense or, if the person was sentenced to death, establish, by clear and convincing evidence, actual innocence of the aggravating circumstance or circumstances the person was found guilty of committing and that is or are the basis of that sentence of death, may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the

court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.

**{¶25}** "In a petition for post-conviction relief, which asserts ineffective assistance of counsel, the petitioner bears the initial burden to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness." *State v. Jackson*, 64 Ohio St.2d 107, 413 N.E.2d 819 (1980), syllabus.

**{¶26}** A defendant may only seek post-conviction relief for violations of his State and Federal Constitutional rights. Both the United States Constitution and the Ohio Constitution provide for the right to assistance of counsel. Counsel's performance will not be deemed ineffective unless counsel's performance is proven to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To show a defendant has been prejudiced by counsel's deficient performance, the defendant must demonstrate but for counsel's errors, the result of the trial would have been different. *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).

**{¶27}** Further, before a hearing is granted in proceedings for post-conviction relief upon a claim of ineffective assistance of trial counsel, the petitioner bears the initial burden to submit evidentiary material containing sufficient operative facts which demonstrate a substantial violation of defense counsel's essential duties to his client and

prejudice arising from counsel's ineffectiveness. *State v. Calhoun,* 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999); *State v. Jackson,* 64 Ohio St.2d 107, 413 N.E.2d 819 (1980), syllabus; *see, also Strickland v. Washington, supra*, 466 U.S. at 687.

**{¶28}** The Ohio Supreme Court has recognized, "In post-conviction cases, a trial court has a gatekeeping role as to whether a defendant will even receive a hearing." *State v. Gondor*, 112 Ohio St.3d 377, 388, 860 N.E.2d 77, 2006–Ohio–6679, ¶ 51. A petition for post-conviction relief does not provide a petitioner a second opportunity to litigate his or her conviction, nor is the petitioner automatically entitled to an evidentiary hearing on the petition. *State v. Wilhelm*, 5th Dist. Knox No. 05–CA–31, 2006–Ohio–2450, ¶ 10, *citing State v. Jackson*, 64 Ohio St.2d 107, 110, 413 N.E.2d 819 (1980). As an appellate court reviewing a trial court's decision in regard to the "gatekeeping" function in this context, we apply an abuse-of-discretion standard. *See Gondor, supra*, at ¶ 52, *citing State v. Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905 (1999); *accord State v. Scott,* 5th Dist. Stark No.2006CA00090, 2006–Ohio–4694, ¶ 34. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

**{¶29}** The trial court in the instant case dismissed Appellant's petition without a hearing for two reasons:  (1) the petition was banned by res judicata, and (2) based on the inevitable discovery rule, Appellant did not demonstrate a reasonable probability of a change in the outcome had counsel presented evidence police searched the car prior to confirmation of the Akron warrant.

**{¶30}** At the outset, we note the discs attached to Appellant's petition containing what purports to be Pickerington Police Department dash cam video from the stop, as well as the timeline of the stop, bear no authentication.  There are no accompanying affidavits averring where the discs came from, nor is there any indication who prepared the timeline from the videos on the discs.

**{¶31}** "Evid.R. 901(A) requires, as a condition precedent to the admissibility of evidence, a showing that the matter in question is what it purports to be." *State v. Simmons*, 2nd Dist. Montgomery No. 24009, 2011-Ohio-2068, 2011 WL 1646819, ¶ 12.

**{¶32}** The threshold standard for authenticating evidence is low.  *State v. Wiley*, 2d Dist. Darke No. 2011 CA 8, 2012-Ohio-512, 2012 WL 443977, ¶ 11.   The most commonly used method is testimony that a matter is what it is claimed to be under Evid.R. 901(B)(1). *State v. Renner*, 2d Dist. Montgomery No. 25514, 2013-Ohio-5463, 2013 WL 6576714, ¶ 30.

**{¶33}** Appellant's affidavit states as follows:

4.  While I was confined in the back of the cruiser, I could hear radio communication coming from the cruiser audio system.

5. I could hear Pickerington law enforcement officials discussing the warrant situation.

6.  It was clear from this communication that the Pickerington Police Department could not readily verify the warrant status from Akron.

7.  I eventually heard Pickerington confirm that they had confirmation of the warrant.

8. Prior to that confirmation, I was able to observe from the back of the cruiser the Pickerington police officers enter and search my car.

9. I reviewed all video and/or audio recordings created on the night in question.

10. The timeline presented in the recordings verify that the Pickerington Police Department entered and searched my car prior to verification of the Akron warrant. The video confirms my observations.

**{¶34}** Scofield Aff., ¶¶4-10.

**{¶35}** Assuming arguendo Appellant's affidavit is sufficient to authenticate the videos of the stop and the prepared timeline, nothing in the video or the affidavits contradicts Gavins's testimony she learned about the existence of the Akron warrants prior to removing Appellant from his vehicle and placing him in the back of the police cruiser. Rather, the radio chatter indicates Pickerington police were waiting for direct communication from Akron to confirm the existence of the warrants which Gavins became aware of upon checking Appellant's driver's license, and were waiting to determine if Akron wanted to pick up Appellant on the warrants.

**{¶36}** The dash cam videos with the accompanying background radio chatter, the affidavit of Elena LaRue, and Appellant's affidavit demonstrate police began to remove items, specifically a gun, from Appellant's vehicle prior to confirmation by Akron police of the existence of the warrant, and while awaiting a decision from Akron as to if they would pick Appellant up. However, we find the trial judge did not err in finding the evidence

would have been inevitably discovered during an inventory search subsequent to Appellant's arrest for obstructing official business, or his arrest on the Akron warrants.

**{¶37}** The inevitable-discovery rule allows the admission of illegally obtained evidence where "it is established that the evidence would have been ultimately or inevitably discovered during the course of a lawful investigation." *State v. Perkins*, 18 Ohio St.3d 193, 480 N.E.2d 763, syllabus (1985). Although Appellant was not ultimately charged with obstructing official business or resisting arrest, in his supplemental motion to suppress, he set forth the facts as follows:

> After checking defendant's information, the officer discovered that the defendant had a warrant out of Akron. Once backup arrived, the officer approached the vehicle a second time and defendant was asked to exit his vehicle. Defendant did not comply with the request by law enforcement and attempted to inform the officers that he was outside of the pickup radius for his Akron warrant. Eventually, defendant was removed from the vehicle, handcuffed and placed in the back of the cruiser. Later, dispatch radioed that Mr. Scofield was not going to be held on his Akron warrant. The officers and radio dispatch then relayed that Mr. Scofield was being arrested for obstructing official business/resisting arrest and would be held in Fairfield County jail. At this point in time, dispatch was informed that Akron would come down to pick him up from the jail on their warrant.

> While the Akron warrant issues were being resolved, several officers had arrived on the scene and they decided to conduct a search of the

vehicle. According to the officer's narrative, during the administrative search, several pieces of evidence were located, including a handgun under the driver's seat. Another firearm was located in the trunk of the vehicle.

**{¶38}** Defendant's Supplemental Motion to Suppress, April 10, 2017.

**{¶39}** After a discussion of the Pickerington police impoundment policy, Appellant's motion states, "Defendant was arrested for obstructing official business/resisting arrest." While Appellant's recitation of the facts in his motion appears to have been taken from the "officer's narrative" of the stop which is not a part of the record before this Court, the dash cam video attached to Appellant's PCR petition also demonstrates after initially being informed by dispatch Akron did not want Appellant to be held for pickup on the warrant, an officer can be heard saying to dispatch, "We're going to have our own charges." Defendant's Ex. C, at 21:11. In her affidavit, Elena LaRue stated an officer told her they were waiting to verify the validity of the warrants out of Akron, and she could pick Appellant up at the Pickerington Police Department if there was not a warrant, but if there was a warrant he would be taken to the Fairfield County Jail. Thus, it is clear from the record Appellant was not going to be released from the scene regardless of the status of the Akron warrant. He would either be arrested on local charges or taken to the jail to await pickup by Akron. Therefore, the car would have been impounded and inventoried regardless of the status of the Akron warrant. This Court previously upheld the validity of the impoundment of the vehicle and the inventory search.

**{¶40}** In addition, ultimately Akron police decided they would pick Appellant up on the warrant, merely three minutes after their first indication they would not pick Appellant

up.  Therefore, Appellant would have been held on the Akron warrants regardless of any arrest for obstructing official business or resisting arrest, the car would have been impounded and inventoried, and the weapons would have been discovered.

**{¶41}**  We find the trial court did not err in finding Appellant has not demonstrated a reasonable probability of a change in the outcome had counsel presented evidence of the timeline of the search of the vehicle, as the evidence would have been inevitably discovered.

**{¶42}**  Because we have concluded the trial court correctly dismissed Appellant's petition without a hearing on the basis of the inevitable discovery rule, we need not discuss the propriety of the trial court's conclusion the petition was barred by res judicata.

**{¶43}**  The first, fourth and seventh assignments of error are overruled.

II., III.

**{¶44}**  In his second and third assignments of error, Appellant argues the trial court erred in allowing the State to file a response to his first PCR petition eight months after its filing, and erred in allowing the State to file a response to his amended petition more than three weeks after its filing.  He also argues counsel was ineffective in failing to object to the State's untimely filed responses.

**{¶45}**  R.C. 2953.21(E) provides:

(E) Within ten days after the docketing of the petition, or within any further time that the court may fix for good cause shown, the prosecuting attorney shall respond by answer or motion. Division (A)(6) of this section applies with respect to the prosecuting attorney's response. Within twenty

days from the date the issues are raised, either party may move for summary judgment. The right to summary judgment shall appear on the face of the record.

**{¶46}** As to the State's delayed response to Appellant's first petition, we find the issue is moot. The trial court did not rule on the merits of Appellant's first petition, but rather allowed Appellant to file an amended petition.

**{¶47}** Regarding Appellant's amended petition, the State's response was not filed within ten days. The trial court scheduled a non-oral hearing on the petition on March 27, 2020, stating the court would consider the pending motion and all of the parties' written arguments on or after this date. While not expressly stated, the trial court's entry implies the State's response would be due on or before March 27, 2020, the date of the non-oral hearing.

**{¶48}** Appellant has not demonstrated prejudice from the trial court's decision to allow the State to file its response by March 27, 2020, nor has he demonstrated the result of the proceeding would have been otherwise had counsel objected to the State's delayed filing. In the time period between Appellant's first petition and his amended petition, the record demonstrates a plethora of activity surrounding a motion to revoke Appellant's community control, which may have delayed consideration of the PCR petition. We also note the State presented no evidence in response to Appellant's petition, but merely made legal argument in response. We found in our discussion of Appellant's first, fourth, and seventh assignments of error above the trial court did not err in denying Appellant's petition without a hearing based on the inevitable discovery doctrine. Nothing in the

record suggests the trial court and this Court would not have reached the same decision in the absence of the March 27, 2020 response filed by the State.

**{¶49}** Appellant's second and third assignments of error are overruled.

V., VI.

**{¶50}** In his fifth and sixth assignments of error, Appellant argues the prosecutor committed misconduct in failing to produce the dash cam videos in a timely manner, and further his trial counsel was ineffective for failing to raise the issue of prosecutorial misconduct.

**{¶51}** Appellant failed to raise this claim in his PCR petition. A party who fails to raise an argument in the trial court waives the right to raise it on appeal. *Niskanen v. Giant Eagle, Inc.,* 122 Ohio St.3d 486, 2009-Ohio-3626, 912 N.E.2d 595, ¶ 34, *citing State ex rel. Zollner v. Indus. Comm.*, 66 Ohio St.3d 276, 278, 611 N.E.2d 830 (1993).

**{¶52}** Further, the record demonstrates Appellant's claim he was not given the recordings in a timely manner is without merit. On March 2, 2017, the State provided a supplemental discovery response which indicated Appellant was given two DVDs, one of the cruiser video from Unit 416 and one from Unit 421. DVD numbers one and two attached to Appellant's PCR petition reflect they were recorded from cruiser Units 416 and 421. The third DVD attached to the petition includes two video clips which appear to have been excerpted from the dash cam videos provided in discovery.

**{¶53}** Therefore, it appears from the record Appellant received the videos more than a month prior to the suppression hearing in this case.

**{¶54}**  The fifth and sixth assignments of error are overruled.

**{¶55}**  The judgment of the Fairfield County Common Pleas Court is affirmed.


By: Hoffman, J.

Gwin, P.J.  and

Delaney, J. concur