[Cite as *State v. Carmichael*, 2026-Ohio-1473.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 30618 |
| Appellee | : | |
| | : | Trial Court Case No. 2024 CR 00608 |
| v. | : | |
| | : | (Criminal Appeal from Common Pleas |
| PRECIOUS CARMICHAEL | : | Court) |
| | : | |
| Appellant | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on April 24, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

_____
MICHAEL L. TUCKER, JUDGE

LEWIS, P.J., and HANSEMAN, J., concur.

MICHAEL MILLS, Attorney for Appellant
MICHAEL P. ALLEN, Attorney for Appellee

TUCKER, J.

{¶ 1} Precious Carmichael appeals from her conviction following a jury trial on charges of strangulation, a fourth-degree felony, and child endangering, a first-degree misdemeanor.

{¶ 2} She contends the trial court erred by refusing to instruct the jury on reasonable parental discipline as an affirmative defense to both charges and by overruling her motion to exclude prior-bad-acts evidence. She also challenges the legal sufficiency and manifest weight of the State's evidence to sustain her convictions and alleges ineffective assistance of counsel.

{¶ 3} For the reasons set forth below, we find Carmichael's assignments of error to be unpersuasive. Accordingly, the trial court's judgment is affirmed.

## I. Background

{¶ 4} A grand jury indicted Carmichael on the above-referenced charges for disciplining her six-year-old daughter by choking her and whipping her with a charger cord. Carmichael pleaded guilty but later withdrew the plea. Prior to trial, she filed a notice of intent to assert reasonable parental discipline as an affirmative defense. She also filed several motions in limine, including a motion to exclude prior-bad-acts evidence about having choked her daughter on other occasions. The trial court overruled the motion in limine shortly before the State introduced the challenged evidence. As for the requested affirmative defense instructions, the trial court concluded, as a matter of law, that reasonable parental discipline was not an affirmative defense to strangulation. The trial court also determined

2

that the evidence did not support a finding of reasonable parental discipline as to either charge.

{¶ 5} The jury found Carmichael guilty of both charges. The trial court sentenced her to five years of community control sanctions with local incarceration for 45 days and other conditions. Carmichael timely appealed, advancing four assignments of error.

## II. Analysis

{¶ 6} The first assignment of error states:

**THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT'S PROPOSED JURY INSTRUCTIONS.**

{¶ 7} Carmichael challenges the trial court's denial of her request for jury instructions on the affirmative defense of reasonable parental discipline. After reviewing case law governing the defense, she addresses it in the context of strangulation. Her substantive argument is as follows:

Strangulation, R.C. 2903.18, is a fairly new statute having been enacted in 2023. Counsel can find no cases that reference parental discipline as an affirmative defense to this violation. However, the statute is broadly written and the Appellant argues that certain actions taken in the pursuit of parental discipline would necessarily overlap with the prohibitions of this statute. R.C. 2903.18 defines strangulation as "[. . .] any act that impedes the normal breathing or circulation of the blood by applying pressure to the throat or neck, or by covering the nose and mouth." The concept of child restraint falls underneath the scope of parental discipline. In this case, [the child] testified the Appellant sat on top of her back while holding the back of her neck. Trial Trans. Pg. 198. The Appellant submits that the much larger weight of an adult

on top of a child would restrict breathing whether or not the child's neck was being touched. Further, the statute separates the terms throat from neck in the definition. The Appellant submits that while it is possible to restrict breathing or blood flow by applying force to the front of the neck (throat) or the sides of the neck (where the arteries are located), applying pressure to the back of the neck does neither. If this Honorable Court finds that a parent's right to restrain a child is a necessary power under parental discipline, then the Appellant submits she was entitled to an affirmative defense jury instruction as to both counts of strangulation and child endangerment.

Appellant's Brief, p. 9-10.

{¶ 8} "Requested jury instructions should ordinarily be given if they are correct statements of law, if they are applicable to the facts in the case, and if reasonable minds might reach the conclusion sought by the requested instruction." *State v. Adams*, 2015-Ohio-3954, ¶ 240. We "review a trial court's determination that sufficient facts do or do not exist to support a jury instruction for an abuse of discretion," which means that the determination was unreasonable, arbitrary, or unconscionable. *State v. Chambers*, 2024-Ohio-3341, ¶ 165 (6th Dist.).

{¶ 9} Carmichael asks us to recognize reasonable parental discipline as an affirmative defense to a charge of strangulation under R.C. 2903.18(B)(3), which provides that no person shall knowingly "[c]ause or create a substantial risk of physical harm to another by means of strangulation or suffocation." "Physical harm" includes "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). "'Strangulation or suffocation' means any act that impedes the normal

4

breathing or circulation of the blood by applying pressure to the throat or neck, or by covering the nose and mouth." R.C. 2903.18(A)(1).

{¶ 10} An affirmative defense "is in the nature of a 'confession and avoidance,' in which the defendant admits the elements of the crime, but seeks to prove some additional fact that absolves the defendant of guilt." *State v. Rhodes*, 63 Ohio St.3d 613, 625 (1992). "A defendant in a criminal case must admit commission of the act constituting the criminal offense before an affirmative defense may be submitted to the jury." *State v. Dadayev*, 2023-Ohio-2326, ¶ 22 (2d Dist.), citing *State v. Morefield*, 2015-Ohio-448, ¶ 30 (2d Dist.).

{¶ 11} In her argument quoted above, Carmichael insists that she did not commit an act of strangulation. She claims she restrained her daughter by sitting on the child's back. She attributes the child's difficulty breathing to having this body weight on her back. Although Carmichael also placed her hands around the back of the child's neck, she maintains that using her hands this way did not restrict the child's breathing. Phrased in the language of the strangulation statute, Carmichael contends she did not impede her daughter's normal breathing or circulation of blood by applying pressure to the child's throat or neck. If the jury accepted this argument, the proper response would have been a not-guilty verdict predicated on deficiencies in the State's evidence rather than her proof of an affirmative defense.

{¶ 12} Because Carmichael does not acknowledge that she impeded her daughter's breathing by applying pressure to the child's throat or neck as an act of reasonable parental discipline, she has not shown that she would have been entitled to the requested affirmative defense instructions. Even if reasonable parental discipline theoretically could be an affirmative defense in a strangulation case (an issue we need not decide), Carmichael has not shown an abuse of discretion in the trial court's refusal to give the instruction. As for the

5

child-endangering charge, Carmichael makes no separate argument, relying instead on the same argument about strangulation. Accordingly, the first assignment of error is overruled.

{¶ 13} The second assignment of error states:

**THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT'S MOTION IN LIMINE TO EXCLUDE PRIOR BAD ACTS.**

{¶ 14} Carmichael contends the trial court erred in allowing the jury to hear part of a recording of a forensic interview with her daughter. When discussing the incident at issue, which involved Carmichael placing her hands around the back of the child's neck, the interviewer asked: "Has anyone else ever done that to the back of your neck before?" The child shook her head "no" and said, "Only my mom." In her motion in limine, Carmichael argued that the child's response alleged that she had choked the child on other occasions. She asserted that this prior-bad-acts evidence was subject to exclusion under Evid.R. 404(B). The State disagreed, noting that the question was whether anyone *else* had choked the child. According to the State, the child's negative response, with the clarifying statement "only my mom," meant that no prior choking incidents had occurred other than the one at issue. The trial court agreed with the State, reasoning that the evidence was "not intended to be used to show that the Defendant has any propensities to engage in abusive conduct with respect to her children or her child."

{¶ 15} Although the child's response could be read as an allegation that Carmichael had choked her on other occasions, we have reviewed a video recording of the exchange and believe it more reasonably should be read as suggested by the State. Immediately after the child mentioned that her "paw pops" had a "hard hand" like her mother, the interviewer asked whether anyone else ever had choked the child by placing hands around the back of her neck. The interviewer appears to have been inquiring into whether the child's "paw pops"

6

or anyone else had done so previously. The child's negative head shake combined with her comment "only my mom" seems to us intended to convey that the incident at issue was the only choking that had occurred. The prosecutor also never argued that Carmichael had shown a propensity for choking her daughter. Under these circumstances, the trial court did not abuse its discretion by refusing to exclude the evidence under Evid.R. 404(B). The second assignment of error is overruled.

{¶ 16} The third assignment of error states:

**THE STATE OF OHIO FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUPPORT THE CONVICTION FOR R.C. 2903.18 AND R.C. 2919.22 AND THE APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

{¶ 17} Carmichael challenges the sufficiency and weight of the evidence to sustain her convictions for strangulation and child endangering. She claims the State's evidence established only that she restricted her daughter's breathing by sitting on the child. She argues that restricting airflow by sitting on her daughter's back did not constitute strangulation and was not an act of child endangering.

{¶ 18} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

7

{¶ 19} Our analysis is different when reviewing a manifest-weight argument. When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

{¶ 20} With the foregoing standards in mind, we reject Carmichael's legal-sufficiency and manifest-weight arguments. She was found guilty of strangulation under R.C. 2903.18(B)(3) for impeding her daughter's normal breathing by applying pressure to the child's throat or neck. Carmichael did not testify at trial, and the only witness with first-hand knowledge of what occurred was her daughter, the victim. The child testified that she was home with Carmichael and two younger siblings on the evening of September 27, 2023. One of the boys told Carmichael that their sister had been "dancing dirty." When Carmichael's daughter denied the allegation, Carmichael accused her of lying. Carmichael proceeded to grab a charger cord to whip the child, who ran upstairs. Carmichael ordered her daughter to return to the living room and "dragged" the child down the last two steps.

{¶ 21} The victim fell to the floor on her stomach with Carmichael on top of her. It appears from the record that she was straddling the child's back. Carmichael's daughter testified that her mother's hands were on the back of her neck, and her mother was "choking [her] on the back of—from the back of [her] neck, and [she] couldn't breathe." Later in her testimony, the child recalled Carmichael's hands being on her neck for a minute or two. She

8

felt like she was going to faint and thought she might have to go to the hospital. The child testified that she sustained bruising from her mother's hands on her neck. She added that she was able to breathe again after her mother got off of her. On cross-examination, the victim agreed that her mother had been on top of her back "grabbing" the back of her neck. The child also agreed with defense counsel that her mother being on top of her made it hard to breathe. She agreed that "all this weight on [her] was choking [her] ability to breathe."

{¶ 22} The victim's testimony attributed her difficulty breathing to Carmichael doing two things: (1) applying hands to the child's neck and choking her "from the back of [her] neck" and (2) sitting on the child's back. Carmichael's act of sitting on her daughter did not constitute strangulation, but her act of choking the child from the back of the neck did. The victim's testimony about sustaining bruising to her neck and being choked from the back of her neck supported a finding that Carmichael knowingly had caused physical harm by impeding the child's normal breathing by applying pressure to the child's throat or neck.

{¶ 23} In arguing otherwise, Carmichael claims it is impossible to choke a person by applying pressure to the back of the neck. We note, however, that the victim testified about her mother choking her "*from the back* of [her] neck." (Emphasis added.) The jury reasonably could have found that Carmichael's adult hands wrapped around the sides of her six-year-old child's neck and consequently restricted the child's breathing. This conclusion is supported by the testimony of an examining physician who reviewed photographs of the child and identified "abrasions and bruising on the chin and anterior neck and extending down above the collarbone on the left." This conclusion also is supported by the child's demonstration of the choking during a forensic interview. Carmichael concedes that breathing can be impeded by applying pressure to the sides of the neck where arteries are located.

9

{¶ 24} Having reviewed the record, we find legally sufficient evidence to support a strangulation conviction under R.C. 2903.18(B)(3). Viewing the evidence in a light most favorable to the prosecution, the jury could have found the essential elements of the crime were proven beyond a reasonable doubt. Carmichael's strangulation conviction also is not against the weight of the evidence. In finding her guilty, the jury did not clearly lose its way and create a miscarriage of justice. This is not an exceptional case in which the evidence weighs heavily against the conviction.

{¶ 25} As for child endangering, Carmichael was found guilty of violating R.C. 2919.22(B)(1), which prohibits recklessly abusing a child under age 18. *State v. Hoff*, 2024-Ohio-5837, ¶ 23 (2d Dist.). For purposes of R.C. 2919.22(B)(1), "'abuse' includes acts of the child's parents causing 'physical or mental injury that harms or threatens to harm the child's health or welfare.'" *State v. Cantrell*, 2024-Ohio-5406, ¶ 35 (applying R.C. 2151.031(E)). Although a parent generally has a right to use corporal punishment, such punishment is unlawful if it violates this definition of abuse. *See* R.C. 2151.031(D) (Emphasis added.) ("*Except as provided in division (E) of this section*, a child exhibiting evidence of corporal punishment or other physical disciplinary measure by a parent, guardian, custodian, caretaker, person having custody or control, or person in loco parentis of a child is not an abused child . . . ."). The nature of an injury resulting from corporal punishment may be evidence that a defendant's actions were not lawful parental discipline. *Cantrell* at ¶ 37.

{¶ 26} In addition to evidence of strangulation, the State presented evidence that Carmichael had whipped her daughter with a charger cord. The child testified that Carmichael struck her multiple times with the cord, including a lash on her face. An examining physician testified that the victim had linear bruises with loop marks on various parts of her body, including her buttocks, flank, thigh, back, and face. The pattern was

10

consistent with an injury caused by a cord. At the time of trial, the child continued to receive mental-health counseling due to the incident.

{¶ 27} Carmichael's assignment of error fails to address the whipping aspect of the State's case. In addition to considering evidence of strangulation, the jury reasonably could have found that whipping with a charger cord recklessly caused physical or mental injury and harmed or threatened the victim's welfare. This conclusion is supported by legally sufficient evidence and is not against the manifest weight of the evidence. Accordingly, the third assignment of error is overruled.

{¶ 28} The fourth assignment of error states:

**APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY ARTICLE I, SECTON 10 OF THE OHIO CONSTITUTION AND THE SIXTH AND FOURTEENTH AMENDMENTS.**

{¶ 29} Carmichael notes that after withdrawing her guilty plea, she did not testify at trial and was unable to pursue the affirmative defense of reasonable parental discipline. She asserts that her inability to present an effective defense constituted ineffective assistance of counsel.

{¶ 30} We review alleged instances of ineffective assistance of counsel under the two-part analysis found in *Strickland v. Washington*, 466 U.S. 668 (1984), which the Ohio Supreme Court adopted in *State v. Bradley*, 42 Ohio St.3d 136 (1989). To prevail on an ineffective-assistance claim, a defendant must show that trial counsel rendered deficient performance and that the deficient performance prejudiced the defense. *Strickland* at 687; *Bradley* at paragraph two of the syllabus.

{¶ 31} Carmichael has not specified what her attorney did or failed to do that constituted deficient performance. Her assignment of error potentially implies deficient

11

performance in connection with withdrawal of the guilty plea, her decision not to testify, pursuit of the affirmative defense, or the failure to "effectively offer any defense." But Carmichael's withdrawal of her guilty plea and decision not to testify were personal choices, and the record does not reflect what, if anything, her attorney advised her on those issues. Therefore, she cannot demonstrate deficient performance regarding them.

{¶ 32} As for the failed affirmative defense and her lack of any effective defense, an unfavorable outcome alone does not establish deficient performance. Defense counsel advocated for the affirmative defense. Counsel also raised a defense to strangulation by attributing the child's inability to breathe to Carmichael being positioned on top of her. During closing arguments, defense counsel told the jury:

> Now the biggest hurdle you're going to have to jump over is that human—there's no doubt that [Carmichael] grabbed her—or excuse me. [Carmichael] grabbed [the child] hard in the back of the neck. And there's no doubt that during this incident, [the child's] ability to breathe was impeded. Yeah. But you have to find beyond a reasonable doubt that grabbing the neck caused her to be unable to breathe. Even if you find that [Carmichael] caused [the child] to not be able to breathe clearly by some other action of hers, it's the law, is the law, and it's got to be by applying pressure to the throat or neck. And if not, you've got to find against the State. And that's what we have.

> . . .

> What did [the child] herself tell us when she was on the stand? I asked her several questions about this, and she was consistent. And I submit the truth that mom was on top of her, too heavy for a little girl like that and pressing the breath out of her. I may not be quoting her verbatim, but that is darn close

that she—it was mom sitting on top of her while she's grabbing her back neck that kept her from breathing.

Tr. 305-307.

**{¶ 33}** Although the jury ultimately found Carmichael guilty, she has not identified anything more defense counsel could have done. Nor has she identified any act that counsel performed deficiently. As a result, we see no ineffective assistance. The fourth assignment of error is overruled.

### III. Conclusion

**{¶ 34}** The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

LEWIS, P.J., and HANSEMAN, J., concur.